# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE ANDERSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, ) <br> **Commissioner of the Social Security** ) <br> **Administration,** ) <br> ) <br> Defendant.[1] ) | Case No. CIV-19-18-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michelle Anderson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) denial of disability benefits. The SSA Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Plaintiff's applications for supplemental security income and disability insurance benefits were denied initially and on reconsideration. Following a hearing, an

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and he is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 13-31). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Ms. Anderson then filed an appeal in this Court, which remanded the matter for further administrative proceedings. (TR. 1010-1032). Following a second administrative hearing, the ALJ issued another unfavorable decision. (TR. 905-920). Plaintiff did not file an appeal with the Appeals Council, but instead filed the instant action. (ECF No. 1). Thus, it is in this posture that the case is before the Court once again, with the second decision of the ALJ being the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 3, 2013, the alleged disability onset date. (TR. 908). At step two, the ALJ determined Ms. Anderson had the following severe impairments: osteoarthritis; right hip labrum repair; migraines; degenerative disc disease—lumbar spine; chronic obstructive pulmonary disease; mitral valve prolapse; depression; bipolar disorder; and anxiety. (TR. 908). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 909).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 918). The ALJ further concluded that Ms. Anderson had the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8 hour day; sit 6 hours in an 8 hour day with normal breaks; never climb ladders/ropes/scaffolds; occasional climbing ramps/stairs; occasionally balance, stoop, kneel, crouch, and crawl; no exposure to environmental irritants such as odors, fumes, dusts, and gases; simple, routine, repetitive tasks; occasional interaction with coworkers, supervisors, and the public; and free of production rate pace.

(TR. 912).

Based on the finding that Ms. Anderson could not perform her past relevant work, the ALJ proceeded to step five. There, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 944-945). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 945). The ALJ adopted the testimony of the VE and concluded that Ms. Anderson was not disabled based on her ability to perform the identified jobs. (TR. 920).

### III. ISSUES PRESENTED

On appeal, Ms. Anderson alleges the ALJ erred in failing to properly: (1) evaluate evidence related to Plaintiff's migraine headaches and (2) evaluate Plaintiff's subjective complaints. (ECF No. 13:4-13).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. THE ALJ'S CONSIDERATION OF EVIDENCE RELATED TO PLAINTIFF'S MIGRAINE HEADACHES

The record contains evidence from Deaconess Family Care which documents Plaintiff's treatment for migraine headaches from Dr. Douglas Brant and Advanced Registered Nurse Practitioner Lyn Brant, from January 2011 through October 2014. (TR. 349-375, 377-668, 676-692, 701-896). According to Ms. Anderson, the ALJ erred in failing to properly consider and evaluate: (1) evidence from Nurse Brant that Plaintiff's migraines were "disabling" and (2) opinions from Dr. Brant regarding Plaintiff's migraines and associated symptoms and limitations. (ECF No. 13:4-9). The Court agrees.

### A. Evidence from Nurse Brant

On March 24, 2014, Ms. Anderson was seen by Nurse Brant, complaining of a migraine which rated 7/10 on the pain scale. (TR. 841). In summarizing the visit, Nurse Brant stated that "[Plaintiff's] migraines are disabling." (TR. 846). Plaintiff contends the ALJ erred in failing to consider this particular statement from Nurse Brant,[2] but the Commissioner disagrees, arguing: (1) the statement from Nurse Brant was not a "medical opinion," (2) Nurse Brant was not considered an "acceptable medical source," and (3)

---

[2] (ECF No. 13:4-6).

the statement concerned an issue of disability, which was reserved to the Commissioner. (ECF No. 16:11-13).[3]

As a threshold matter, the Court agrees with the Commissioner that Nurse Brant is not considered an "acceptable medical source" and therefore cannot give a "medical opinion" within the meaning of the Commissioner's regulations. See 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[4] However, Nurse Brant is considered a nonacceptable or "other" medical source, and, as such, her opinion is to be considered as evidence "show[ing] the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-3p, at *2.

The Commissioner argues that Nurse Brant's comment regarding Plaintiff's headaches being "disabling" involved an issue reserved to the Commissioner, and therefore, is not entitled to "any special significance." (ECF No. 16:12). The Court agrees that the issue of disability is one reserved to the Commissioner. See SSR 96-5P, 1996 WL 374183, at *3 (July 2, 1996). Even so, "opinions from *any medical source* on issues reserved to the Commissioner must never be ignored." SSR 96-5P, 1996 WL 374183, at

---

[3] As an additional defense to Plaintiff's argument, the Commissioner states: "And, as the ALJ found, the treatment records from Dr. Brant's practice tended to show normal psychiatric examination findings, which the ALJ relied on to discount Dr. Sternlof's opinion that Anderson had marked and extreme mental limitations [and] Nurse Brant's psychiatric examination findings from the visit at issue were normal." (ECF No. 16:13) (internal citation omitted). But the issue at hand concerns Nurse Brant's evaluation of Plaintiff's migraine headaches, not her psychiatric status.

[4] The Commissioner notes Plaintiff's reliance on SSR 06-3p, and states: "that SSR was rescinded in March 2017." (ECF No. 16:12). The Commissioner is correct—the SSR was rescinded effective March 27, 2017—but that regulation continues to apply to claims, like Ms. Anderson's, which were filed before that date. See 82 Fed. Reg. 15263-01, 15263 (Mar. 27, 2017).

5

*3 (July 2, 1996) (emphasis added). Rather, "the ALJ must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Lackey v. Barnhart*, 127 F. App'x 455, 457-458 (10th Cir. 2005). Here, the ALJ completely omitted any discussion of Nurse Brant's statement that Plaintiff's headaches were disabling. *See* TR. 905-20. Such inaction constitutes reversible error. *See Victory v. Barnhart*, 121 F. App'x 819, 825 (10th Cir. 2005) ALJ's failure to mention treating source's opinion on issue reserved to the Commissioner was "of course, clear legal error.").

### B. Evidence from Dr. Brant

Next, Ms. Anderson argues that the ALJ erred in failing to consider evidence from Dr. Brant regarding Plaintiff's headaches and associated limitations—namely stress, photophobia, and phonophobia. (ECF No. 13:6-9).[5] The Court agrees.

#### 1. The ALJ's Duty to Consider Opinion Evidence

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 1527(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must

---

[5] Plaintiff also alleges the ALJ erred in failing to consider a statement from Nurse Brant that Plaintiff "needs to try to manage her stress to improve her headache frequency." (ECF No. 13:6-7). According to Plaintiff, "This statement provides a direct link between stress and Ms. Anderson's migraines; when Ms. Anderson gets stressed, the frequency with which she experiences migraines increases." (ECF No. 13:6-7). The Court disagrees—Plaintiff's assumption is pure speculation, as Nurse Brant did not directly state that Plaintiff's headaches were caused by stress. However, as discussed below, Dr. Brant did render such a finding and the ALJ erred in failing to consider it. *See infra*.

6

determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted). If controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527.

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at 5. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### 2. Error in the ALJ's Consideration of Opinion Evidence from Dr. Brant

Plaintiff alleges the ALJ erred in failing to consider evidence from Dr. Brant which documented: (1) migraine-related symptoms including photophobia and phonophobia and (2) that the migraines were exacerbated by stress, noise, and light. (ECF No. 13:7-9). The Court agrees.

At various times during his treatment, Dr. Brant noted that Ms. Anderson suffered from photophobia and phonophobia when she suffered a migraine. (TR. 356, 359, 361, 367, 374, 375, 395, 401, 417, 437, 449, 573, 598, 617, 711, 857, 890). Specifically, on June 3, 2013, Dr. Brant noted:

- Plaintiff had been having migraine headache episodes with associated photophobia and phonophobia "2 times a week starting 10 years ago;"

- Plaintiff's migraine symptoms were improved by rest, a darkened room, sleep, and relaxation exercises;

- Plaintiff's migraine symptoms were "worsening" and were made worse by noise, movement, light, fatigue, and stress.

(TR. 573). And on July 23, 2013 and August 6, 2013, Dr. Brant described Plaintiff's migraines as "severe" and stated that the headaches and associated symptoms of photophobia and phonophobia had "worsened." (TR. 598-615, 617-634).

Finally, on October 1, 2013, Dr. Brant stated that Plaintiff's migraine symptoms:

- were "caused by stressful event[s];"

- were made worse by light, stress, and food;

- were "worsening;" and

- included associated photophobia and phonophobia.

(TR. 711).

In evaluating the evidence from Dr. Brant, the ALJ stated: Ms. Anderson's "history of migraine headaches, ... [is] well documented in the records maintained by Douglas Brant, M.D." (TR. 916). The ALJ then: (1) recited nearly two pages of findings from Dr. Brant's office related to Plaintiff's mental status and (2) stated that "Dr. Brant's records do not document abnormal psychiatric findings." (TR. 916-917). This is error. *See Deardorff v. Comm'r, SSA*, 762 F. App'x 484, 490 (10th Cir. 2019) ("In reviewing the evidence, ... the ALJ cited to medical records for some symptoms, but ignored the headache symptoms even though they are noted in those same records.").

In fact, in the administrative decision, the ALJ only twice mentions Plaintiff's migraines, stating: (1) "in September 2012 ... the claimant complained of headache" and (2) in October 2013[,] Dr. Brant noted the claimant was experiencing ... severe migraine headaches." (TR. 916, 917). But aside from these two isolated comments which refer only to Plaintiff's subjective complaints of a headache, the ALJ completely fails to discuss Dr. Brant's treatment of Plaintiff's migraines and his opinions regarding limitations associated with the same. The ALJ's failure in this regard warrants remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("In this case, the ALJ offered no explanation for the weight, if any, he gave to the opinion of [ ], the treating physician. We must remand because we cannot properly review the ALJ's decision without these necessary findings."); *Deardorff*, at 490 ("The ALJ erred by failing to discuss the

significant evidence of [the plaintiff's] headaches and how they might impact his functional abilities—either as a separate impairment or as a symptom of his neck condition. We therefore remand for the ALJ to consider the evidence of Mr. Deardorff's headaches[.]")

Plaintiff also argues that the ALJ failed to include restrictions in the RFC related to the migraines—specifically owing to stress, photophobia, and phonophobia. (ECF No. 13:7-9). But at this point, any findings on the RFC would be premature pending the remand for reconsideration of Dr. Brant's opinions, as discussed. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## VII. THE ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

Ms. Anderson alleges error in the ALJ's evaluation of Plaintiff's subjective allegations. (ECF No. 13:9-13). The Court agrees.

### A. ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms and determine the extent to which the symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to

determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B. Plaintiff's Testimony

At the hearing on June 20, 2018, Ms. Anderson's attorney stated that his client would "stand on [her] previous testimony" from the first hearing, but also noted Plaintiff's conditions "have remained the same or slightly worsened." (TR. 933, 936). At the first

11

hearing on December 2, 2014, Plaintiff testified that she had suffered from migraine headaches off and on since she was 18 years old. (TR. 46). According to Ms. Anderson, migraines cause her sensitivity to light and sound and sometimes caused her to vomit. (TR. 46). Ms. Anderson explained that at times, she was able to treat the migraines with an Imitrex shot, which allowed her to then "go on with her day." (TR. 46, 56). However, Plaintiff also explained that one headache might last for 3-4 days, which caused her to be stuck in bed, unable to do anything because of the pain. (TR. 46, 56). If the migraine lasted for more than 3 days, Plaintiff testified that she had to go the hospital for an intravenous treatment of what she described as a "migraine cocktail." (TR. 46). Ms. Anderson also stated that she had tried a treatment involving injections to her head "to block the pain nerves." (TR. 47). On average, Plaintiff stated that she suffered migraine headaches approximately 18 days per month. (TR. 47).

### C. Error in the ALJ's Consideration of Plaintiff's Subjective Allegations

In formulating the RFC, the ALJ stated that she had considered Ms. Anderson's subjective allegations. (TR. 912). The ALJ then acknowledged the two-step framework under SSR 16-3p, and stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 913). Then, with no mention of Plaintiff's testimony, ALJ discounted Ms. Anderson's subjective allegations, stating:

- "the medical evidence of record documents that the claimant typically responds to medication prescribed for migraine headaches;"

- "the medical evidence of record does not document exacerbation of headache events that would reasonably be expected to preclude the performance of work related activities on a regular and continuing basis;"

- "during regular follow-up appointments with treating source Dr. Brant, the issue of acute headache pain is seldom discussed;"

- Plaintiff sought care from Dr. Brant and Nurse Brant "for regularly scheduled follow-up appointments and not on an emergent basis or for acute care;" and

- "evidence of record does not document side effects of medication used for treatment of headache pain … that could reasonably be expected to preclude performance of a range of light work as discussed herein."

(TR. 913).

The initial, obvious error is the ALJ's failure to even mention Plaintiff's "statements regarding [her] symptoms." SSR 16-3p, at *4. Next, although the ALJ provided five rationales to discount Plaintiff's testimony, the ALJ did not "closely and affirmatively" link any of the rationales to specific evidence of record. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (explaining that ALJ is required to closely and affirmatively link credibility findings to substantial evidence in the record and to "articulate specific reasons" for such findings); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("[T]he link between the evidence and credibility determination is missing; all we have is the ALJ's conclusion.").

Although the ALJ stated that "the claimant typically responds to medication prescribed for migraine headaches" and "evidence of record does not document side effects of medication used for treatment of headache pain," the ALJ failed to provide any

evidentiary support for the conclusion. The ALJ's statement that "the medical evidence of record does not document exacerbation of headache events that would reasonably be expected to preclude the performance of work related activities on a regular and continuing basis" is potentially undermined by the evidence from Dr. Brant which the ALJ failed to consider. Such a conclusion would be premature absent a proper consideration of Dr. Brant's opinions.

Also, the ALJ's statement that Plaintiff "seldom discussed" headache pain with Dr. Brant is simply incorrect. *See supra*. And finally, the ALJ's statement about not seeking care with Dr. Brant on an "emergent" basis is misleading. When Plaintiff suffered an acute migraine, she sought treatment at the Deaconess Hospital Emergency room, with the record containing documentation of eleven of such visits. *See* TR. 298 (diagnosis of "Acute o[r] chronic severe headache"); TR. 301 ("diagnosis of "Acute Cephalgia, suggests tension headache"); TR. 306-307 (statement that Plaintiff's condition was "emergent" and diagnosis of "Acute Severe Migraine Headache"); TR. 312-313 (diagnosis of "Acute Severe Migraine Headache"); TR. 310 (statement that Plaintiff's condition was "emergent" and diagnosis of "Acute Severe Migraine Headache"); TR. 316 (diagnosis of "Acute Intractable Migraine Headache"); TR. 319 (diagnosis of "Acute Severe Migraine Headache"); TR. 322-323 (statement that Plaintiff's condition was "emergent" and diagnosis of "Acute Severe Migraine Headache"); TR. 280 (diagnosis of "Acute Cephalgia"); TR. 279-283 (diagnosis of "Acute exacerbation of chronic headache"); TR. 286 (diagnosis of "Acute severe headache").

In sum, the ALJ:

- failed to discuss Plaintiff's testimony;

- failed to provide evidentiary support to his conclusions; and

- provided misleading rationales.

Accordingly, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints was neither legally sufficient or supported by substantial evidence and remand is warranted.

## VII.  PLAINTIFF'S REQUEST FOR AN IMMEDIATE AWARD OF BENEFITS

Ms. Anderson requests that rather than prolong the proceedings before the agency, we remand with instructions to order the Commissioner to make an immediate award of benefits. (ECF No. 13:14-15) "Whether or not to award benefits is a matter of our discretion." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). In exercising this discretion, we consider such factors as "the length of time the matter has been pending" and "whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Id.* (brackets and internal quotation marks omitted).

The Court recognizes that this matter has been pending nearly over six years and has already been remanded once for further administrative proceedings. But an eventual award of benefits is not foreordained on this record, and further administrative proceedings are appropriate to permit the Commissioner to properly weigh the evidence and evaluate Plaintiff's subjective allegations. Therefore, the Court denies the request for an immediate award of benefits.

# ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision. Previously, this Court reversed and remanded this case, in part, for the ALJ to properly evaluate any functional limitations related to Plaintiff's migraine headaches. In the remand order, the Court stated:

> Despite the numerous medical records and Plaintiff's testimony, the ALJ failed to discuss the impact of the migraines in the RFC determination or in her credibility analysis. Following a nearly 10-page single-spaced recitation of the medical evidence, the ALJ evaluated the opinion evidence and Ms. Anderson's credibility. (TR. 26-29).
>
> > With respect to the opinion evidence, the ALJ stated:
> >
> > As for the opinion evidence, the undersigned gives great weight to the opinions by the DDS Medical Consultants at Exhibits 1A, 2A, and 7A and 8A. The opinion by the psychologist at Exhibit 8F is given very little weight as he had only treated her since July 2014, and he completed a form and this psychologist's opinion contrasts sharply with other evidence of record, which renders it less persuasive.
>
> Despite the plethora of medical evidence concerning Plaintiff's migraine headaches, which the ALJ acknowledged, she never rendered an opinion regarding the medical evidence as it related to this impairment.

*Anderson v. Berryhill*, No. CIV-16-865-STE, 2017 WL 1436482, at *4 (W.D. Okla. Apr. 21, 2017). However, as discussed, the ALJ failed to comply with the Court's previous order.

Thus, on remand, the ALJ **must**:

- consider and properly evaluate any evidence/opinion from any acceptable medical source or "other source" related to Plaintiff's migraine headaches, associated symptoms, and related functional limitations; and

16

- perform a proper evaluation of Ms. Anderson's subjective allegations in accordance with SSR 16-3p, including a discussion of Plaintiff's testimony.

ENTERED on September 27, 2019.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE